VIRGIL BROOKS ET UX v. C. S. JOHNSON ET UX

5-5491                                   465 S. W. 2d 103

Opinion delivered March 29, 1971
[Rehearing denied April 26, 1971.]

*Ben E. Rice* and *U. A. Gentry,* for appellants

*Howell, Price, Howell & Barron,* for appellee.

CONLEY BYRD, Justice. Appellants Virgil and Marcell Brooks, husband and wife, appeal from a decree finding that appellees C. S. and Annie Johnson, husband and wife, are the owners of and entitled to the possession of a 16 foot disputed strip of ground. For reversal appellants contend that the trial court erred in finding the Johnsons are the owners of the property in controversy for the following reasons:

> "1. The deed which was the basis of plaintiff's ownership of the property was never introduced into the record.

> "2. Assuming that the deed purporting to convey the property to the plaintiffs was sufficiently identified and made a part of the record, said deed is void for indefiniteness and conveys nothing.

> "3. Assuming further that the deed was made a part of the record and should be considered, the plaintiffs had the burden of deraigning title from the sovereign and the mere introduction of a deed conveying the property to appellees even though the description was sufficient, did not constitute a deraignment of title.

> "4. The Court erred in refusing to confirm and quiet the defendant's title, it being undisputed that the defendant had had the actual, open, continuous and adverse possession of the property for a period of 20 years or more."

The Johnsons instituted this action in the trial court alleging that they "are now, and for a long time hitherto have been the owners of that certain piece or parcel of land situated, lying, and being in the county of Pulaski, State of Arkansas, and described as follows:

> "Fifty-eight and four-fifths (58 4/5) acres, more or

less, lying in the Northeast quarter (NE 1/4) of Section 33, Township Three (3), Range Ten (10) West, said 58 4/5 acres, more or less, running North and South the entire length of said Northeast quarter of Section 33 and lying immediately East of the Thirty-three and one-third (33 1/3) acres deeded to Matilda Johnson."

Pursuant to a motion to make the complaint more definite and certain, the Johnsons filed a response setting out a corrected property description according to a survey made by L. M. Harp on June 4, 1969.

Appellants' answer and counter-claim, as abstracted by them, is as follows:

## "ANSWER

"They deny, both generally and specifically, each and every allegation contained in plaintiffs' complaint and amendments thereto except as hereinafter pleaded and admitted; that plaintiffs do not have title to an accurately described piece of property and their rights in and to the property occupied by defendant and intervenor [Mrs. Brooks] are inferior to the rights of defendant and intervenor in and to the property so occupied and possessed by defendant and intervenor.

## "COUNTERCLAIM

"The defendant and intervenor allege that they are the record owners of and reside on the following described property situated in Pulaski County, Arkansas:

'A part of the East One Half (E 1/2) of the Northeast One Fourth (1/4) of Section Thirty Three (33), Township Three (3) North, Range Ten (10) West of the Fifth Principal Meridian, and more particularly described as follows: Beginning at the Northeast corner of said subdivision, thence West Sixteen (16) chains and

seventy eight (78) links, thence South Forty (40) chains and Thirty Two (32) links to Quarter Section line, thence East Three (3) chains and Twenty Eight (28) links, thence North Ten (10) chains, thence East Thirteen (13) chains and Fifty (50) links to the East line of said subdivision, thence North to point of beginning, less and except Four (4) acres, more or less, on the North side thereof, used as a cemetery, containing Fifty Four and 15/100 (54.15) acres.'

"That in addition to owning the foregoing property defendant and intervenor are the owners of an additional strip of land 16 feet wide running along the entire Western edge of the aforementioned property; that their ownership thereof arises out of their continuous possession of said property since June 22nd, 1948, in an actual, notorious, hostile, and exclusive manner with the intent to hold adversely to the claims of all other persons; that the plaintiffs have had notice of the aforementioned adverse possession since June 22nd, 1948; that said lands have been fenced and closed to a point of intersection with a creek traversing the property owned by defendant and intervenor; that said boundary fence to the point of intersection with said creek has constituted the boundary between the property owned by defendant and intervenor and plaintiffs since June 22nd, 1948, and even prior thereto, and plaintiffs have acquiesced thereto. Defendant and intervenor pray the plaintiffs' complaint and amendment thereto be dismissed; that title to the 16 foot strip of land along the western boundary of land owned by defendant and intervenor be quieted against the claims of the plaintiffs. Filed May 28th, 1970."

Appellee Callie S. Johnson testified that both his and the Brooks property were at one time owned by his grandfather. He inherited the land in 1929. According to him, during the free stock range era, approximately 1914 or 15, his father and a predecessor of Mr. Brooks each fenced one side of a lane for their cattle's use to

go to a free range in a big bottom north behind their property. The lane was on their common boundry, and each owner fenced 16 1/2 feet inside his property. Over the years the fence set back on appellant's property had fallen down and been destroyed. However, Brooks' predecessors in title recognized the true boundary as the boundary between the two properties. When Brooks bought the property in '47 or '48, Johnson informed him that Mr. Thompson, Brooks' immediate predecessor, had inadvertently built a henhouse over on Johnson's property. He said that Brooks at that time offered to move it and that he suggested Brooks could leave it if he would not build any more encroachments. A short time later the henhouse was torn down. Johnson said the present controversy occurred about four years ago when he talked to Brooks about building a common boundary fence on the true line. At that time Brooks wanted to join in building a common boundary fence but wanted to put it along the old fence.

Appellee Annie Johnson testified that the day Brooks bought the property from Thompson, she pointed out to Brooks the location of the true boundary line and advised him that the fence was not the line. She also recalled the incident referred to by her husband about the removal of the building and testified that the building was removed about a week later but she did not know who removed it.

Claude Stanfill testified that he bought the property now owned by Brooks in 1932, and owned it for 12 years. He traded it to Mr. Thompson. During the time of his ownership he was aware of the true boundary between his property and the Johnsons. During that time he used the strip of land belonging to Johnson under an agreement with Johnson and when he sold the land to Thompson he informed Thompson that the 16 feet was being used with Johnson's permission.

Appellant Brooks, on the other hand, testified that he purchased the property in 1948, and that when he began work on the barn he recalled Mrs. Johnson telling him that the fence was 16 feet over on her side of the

boundary. He said that he then informed her that he bought the property with the fence as the line and would not discuss it further. From the time of his purchase up until the trial he had pastured the area up to the fence and had regularly repaired the fence. His first discussion with Mr. Johnson occurred approximately 4 or 5 years ago when Mr. Johnson wished to move the fence over 16 feet. Brooks says that he did tear down the henhouse but only because it was unsightly. He denied Johnson's conversation about the house. Brooks said Johnson acquiesced in his use of the fence as a boundary until about 4 years ago. At that time Johnson wanted to sell him the strip of property and he told Johnson that he did not feel he should buy his own property. Johnson then wanted to build a partnership fence and his answer was that he would meet him half way—i. e., he would back over one foot and build a fence but he would not build a partnership fence on the alleged line that Johnson had chosen. Admittedly thereafter Johnson attempted to have a survey made and Brooks caused Johnson to be arrested for trespassing. The boundary as surveyed both by his and Johnson's surveyors would come within 10 feet of Brooks' house. Brooks maintains that he has always mowed up to the fence line under a claim of right. On cross-examination Brooks testified that his deed introduced into evidence outlined the boundaries of his property.

George West testified that he surveyed the lands for Brooks and that his survey showed the line between the Johnson property and the Brooks property and also the fence line in dispute.

L. M. Hays surveyed the property for the Johnsons. In arriving at the description of the Johnson property he used Johnson's abstract of title, Brooks' deed and a copy of a recorded survey made by Francis H. Conway under date of Aug. 7, 1901. In making his survey, Hays found wire embedded in the trees along the true boundary line between the two properties.

We find no merit in appellant's first three points. Each point is premised on the proposition that the

Johnson failed to deraign that title necessary to support an action in ejectment. While it is true that the action as originally filed was in effect an action in ejectment, any lack of equity jurisdiction was cured by appellant's counterclaim.

Johnson, without objection, was permitted to testify from his own knowledge that his grandfather at one time owned both the lands now owned by him and by Brooks. He also testified with reference to the different persons who had held both tracts under the common owner. While such testimony may have been subject to the best evidence rule, in the absence of such objection, it certainly deraigns the title of both parties from a common source.

Furthermore Johnson testified that the persons under whom Brooks holds his title had recognized his title to the true line. This testimony was substantiated by Claude Stanfill who stated that he was a predecessor in title of Brooks and that he got the permission of Johnson before he tied his pasture fence to the fence in question.

The general rule is that a party in an ejectment suit or an action to quiet title must recover upon the strength of his own title. However, we pointed out in *Collins* v. *Heitman,* 225 Ark. 666, 284 S. W. 2d 628 (1955), where the parties trace their title to a common source, the one must prevail who has the superior equity. In this case it appears that the superior equity or *prima facie* title stands in Johnson. See *Weaver* v. *Rush,* 62 Ark. 51, 34 S. W. 256 (1896); *McCoy* v. *Anderson,* 137 Ark. 45, 207 S. W. 213 (1910); and 5 ALR 3d 375, § 7.

The evidence with respect to the appellants' adverse possession is conflicting. The Johnsons testified that Brooks recognized their title and agreed to remove the henhouse at the time Brooks purchased the property in 1948. Brooks, on the other hand, denies that he recognized the Johnsons' title and claims that at that time he asserted his ownership to the fence.

In *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444 (1906), we stated the applicable rule in this language:

". . . If one before the statutory period has run, and before he has acquired title by adverse possession, acknowledges or recognizes the title of the owner, such recognition will show that his possession is not adverse, and the statute of limitations will not commence to run against the owner until the adverse claimant repudiates the title of the owner. . . ."

In *Britt* v. *Berry,* 133 Ark. 589, 202 S. W. 830 (1918), we pointed out that where the entry is permissive the adverse possession statute will not begin to run against the owner until an adverse holding is declared and such notice is brought to the knowledge of the owner.

Whether Brooks recognized the Johnsons' title as the latter testified or whether he asserted his ownership to the fence at the time of his purchase as he testified were issues of credibility. From this record, we cannot say that the Chancellor's finding in favor of appellees is contrary to a preponderance of the evidence.

Affirmed.