Ramon PHILLIPS, Samuel Phillips, Lue G. Kelley, Johnie
Blake, Joseph Phillips, Naomi Murphy, Ruth Harris, Mable
Cook, Freddie Windmon, Harvey L. Windmon, Rodella
Anderson, Charlie Windmon, Odessa Cook, Betty Ann
Windmon, Booker T. Windmon, Hugie Windmon, Jr., Leon
A. Phillips, Jr., Dorothy Jean Gilbert, Andrew Phillips,
Harvey Lee Phillips, Imogene Dantzler, Jettie Beasley,
Charlie Lee Phillips, Ida B. Releford, Pear A. Howse and
Katie B. Phillips *v.* COMMONWEALTH SAVINGS &
LOAN ASSOCIATION, Osceola, Arkansas, Lowrance
Bros. & Co., and individually C. J. Lowrance III, and C. J.
Lowrance IV, and the Resolution Trust Corporation as
Conservator of Commonwealth Savings & Loan Association

91-180                                    826 S.W.2d 278

Supreme Court of Arkansas
Opinion delivered March 23, 1992

*Richard L. Mays, Melanie L. Marsh-Weaver*, and *Oscar Fendler*, for appellants.

*Ball & Barton*, by: *Whit Barton*, for appellee.

Tom Glaze, Justice. Appellants brought a separate chancery court lawsuit to set aside a foreclosure decree which the same court had entered approximately three months earlier in favor of appellee Commonwealth Savings & Loan Association. Commonwealth had sued the estate of Ed Phillips and its co-executors and co-trustees, Leon and Jones Phillips, for defaulting on a promissory note which was secured by eighty acres of land located in Mississippi County that had been owned by Ed Phillips and made a part of a trust created under his will.

In his will, Ed established a trust for the benefit of his wife, Doshie, during her lifetime, and afterwards for the benefit of his nephews, Leon and Jones Phillips, his niece, Betty Phillips Winnmon, his great nephew, James Gates, and their heirs. Ed further devised all of his real estate to Leon and Jones, as co-trustees, directing that all income after taxes be paid annually to Doshie. He named his attorney, Henry Swift, a special trustee for the purpose of arbitrating any dispute arising between Leon and Jones. Upon Doshie's death, Ed directed all income and proceeds were to be paid equally to Leon, Jones, Betty and James, and on their death the trust was to terminate with the corpus to be apportioned to the "heirs of their bodies" — the appellants in this appeal. Although Ed's will provided the real estate should be "neither mortgaged nor sold," the will's final provision stated as follows:

> In the event, and only in the event, my wife should, during her lifetime and after my death, become destitute, then if such condition exists in the opinion of my executors and trustees, the realty hereby bequeathed (sic) to the trust I have established may be mortgaged for her benefit.

Ed's will was probated in 1960, and in 1977, Leon and Jones were authorized to mortgage the trust's real estate, finding Doshie was destitute and loan monies were necessary to build her a house for her use and occupancy. In September 1985, Leon and Jones again filed a probate petition to borrow money from Commonwealth against the trust's real estate, and these proceeds were used to pay off the earlier loan as well as the expenses of Doshie's illness while residing at a nursing home. Doshie died in December of 1985, and Commonwealth obtained its foreclosure decree on the above-described indebtedness two years later. The trust's real estate was conveyed by commissioner's deed to Lowrance Bros. & Co. for $60,000.00, approximately $43,000.00 of which was used to pay Commonwealth's loan and the balance was set aside for the benefit of the Ed Phillips' estate.

In this appeal, appellants raise three points for reversal. First, they claim the chancellor erred in refusing to set aside Commonwealth's foreclosure decree because Commonwealth had failed to obtain personal jurisdiction of all necessary parties. We must disagree.

Commonwealth sought service upon Leon and Jones Phillips under ARCP Rule 4(f) and (j) by mailing them, certified mail, return receipt requested, a copy of the summons, the foreclosure complaint, amended complaint and a warning order to the address they gave on the 1985 loan application. The notice was returned undelivered. By affidavit, Commonwealth's vice-president averred that Commonwealth had made diligent inquiry, and it believed Leon and Jones were non-residents of Arkansas and their last known address was in Osceola. However, Swift, the special trustee of Ed Phillips' estate, answered Commonwealth's complaint, stating Betty Phillips Winnmon and Jones Phillips were deceased and that Jones's heirs were necessary parties. Swift added that Leon was hospitalized and incompetent. No addresses were set out in Swift's answer except to say that Leon was a resident of Phillips County. After Swift's answer, Commonwealth amended its complaint to reflect that there may be additional parties not appearing in the chain of title to the Ed Phillips' property. It subsequently published a warning order in the Osceola Times under the terms of Rule 4(j), naming Leon and Jones, individually and as co-trustees, and referring to all other interested parties who might claim an interest in Ed Phillips' eighty-acre estate. The description of the property was included in the warning order as was the caption of the foreclosure pleadings.

Appellants question Commonwealth's reliance on Rule 4 which requires two-weeks publication of the warning order in the county in which the court is held. They argue that Ark. Code Ann. § 16-58-130(b) and (c) (1987) requires four-weeks publication in the county where the action is brought. Appellants argue § 16-58-130(b) and (c) should control because it specifically provides for constructive service in actions against unknown heirs of a deceased person.

■ Provisions (f) and (j) of Rule 4 respectively set out in detail the methods to obtain service on defendants whose identifications and whereabouts are unknown and whose service may be obtained by warning order. Those provisions are clearly broad enough to include actions such as those contemplated under § 16-58-130(b) and (c). To the extent § 16-58-130(c) provided a different and longer publication requirement than Rule 4, we hold provision (c) was preempted by Rule 4. Thus, the two-week

publication used by Commonwealth was correct.[1] *See Lyons* v. *Forrest City Machine Works, Inc.*, 301 Ark. 559, 785 S.W.2d 220 (1990).

Under their first point, appellants also argue Commonwealth never made diligent inquiry as to the whereabouts of Leon Phillips and those appellant-heirs of Jones Phillips and Betty Winnmon, especially in view of the information furnished Commonwealth by Swift's answer in the foreclosure lawsuit.

Basically, appellants contend the record failed to show proper service of summons on Leon in the foreclosure lawsuit. Nor, they argue, did Commonwealth show it had made diligent inquiry regarding the names and addresses of the heirs of Jones or Betty. The foreclosure decree, however, recites Commonwealth obtained service on these parties pursuant to ARCP Rule 4. In *Frazier* v. *Merrill*, 237 Ark. 242, 372 S.W.2d 264 (1963), this court held as follows:

> . . . [A] judgment of a court of general jurisdiction cannot be collaterally attacked, unless the record affirmatively shows want of jurisdiction, and every fact not negatived by the record is presumed in support of the judgment of a court of general jurisdiction, and *where the record of the court is silent upon the subject, it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did.* (Emphasis in original.)

In sum, it is not enough to say the record failed to show Commonwealth did not make a diligent inquiry as to the appellants' identities and addresses or as to where Leon was residing. The court in its foreclosure decree reflected service was had in the time and manner required by law, and this court now reviewing the chancery court's decree presumes, as it must, that the court inquired into and found the existence of the facts authorizing it to render its decree. Again, Swift's answer in the foreclosure lawsuit never set forth appellants' names and addresses, and Commonwealth's action in obtaining service on all

---

[1] These statutory provisions have since been reconciled by the General Assembly's enactment of Act 199 of 1991, which amended them to read consistent with Rule 4(j).

necessary parties under Rule 4(f) and (j) is not in conflict with Swift's pleading. Presumably, Commonwealth acquired no knowledge of the appellants' names and identities, although it made diligent inquiry to locate them.

■ Next, the appellants argue the trial court erred in finding the two loans and mortgages then against the trust property were valid. Their argument in part is based on the language of Ed Phillips' will that restricted the co-trustees' power to mortgage the trust property only if Doshier became destitute. Appellants offer factual argument on why they believe Doshie was never destitute. The short answer to appellants' argument here is that the Mississippi County Probate Court decided this issue in its June 20, 1977 order authorizing the first mortgage. In that order, the probate court determined it was necessary to mortgage the estate's real property because under the terms of Ed Phillips' will, "Doshie is destitute." While appellants may disagree with the probate court's 1977 order on this issue, that court acted within its jurisdiction and its order is not now open to collateral attack. *See Filk* v. *Beatty*, 298 Ark. 40, 764 S.W.2d 454 (1989).

■ Appellants also suggest the co-trustees could only mortgage a life interest because Ed Phillips' will created a fee-tail interest whereby appellants were remaindermen in fee simple. We need not explore this aspect of appellants' argument since we believe the intent of the testator, Ed Phillips, is clear from reading his will that, foremost, he wanted his wife cared for and towards that end, he established a testamentary trust.[2] He devised *all* of his real estate to the co-trustees for the purposes set out in his will, and made it plainly understood that the trustees could mortgage the real estate for Doshie's benefit if she became destitute — which she did. In *Ware* v. *Green*, 286 Ark. 268, 691 S.W.2d 167(1985), this court held that the exercise of a life tenant's power of sale provided for in the will without reference to judicial determination should be set aside by a court only if exercised in bad faith. Under the Restatement (Second) of Trusts, § 88 (1959), the trustee of an interest in land takes such an estate as is

---

[2] We similarly dispose of appellants' mention of the statute of uses since we find the argument inapplicable to the will and trust provisions here.

necessary to enable him to perform the trust by the exercise of such powers as are incident to the ownership of the estate. Here, the co-trustees. Leon and Jones, determined that, in their opinion, Doshie was destitute. By order, the probate court confirmed the trustees' opinion and authorized the mortgaging of the estate's real property. We find nothing in the record that reflects bad faith on the trustee's part, and in fact, as previously discussed, the probate court's order bearing on Doshie's destitute condition is not now subject to collateral attack.

■ Finally, appellants argue that the trial court erred in granting summary judgment to Lowrance Bros. & Co. under ARCP Rule 60(c)(2) and (f), thereby determining Lowrance had acquired good faith title to the eighty acres held and mortgaged by the estate. Like in their first point for reversal, appellants claim they had not been properly constructively summoned. They say that neither Commonwealth nor its attorney made a bona fide effort to locate appellants. Because the same law firm represented both Commonwealth and Lowrance, appellants assert the trial court should have imputed to Lowrance Commonwealth's failure to make a diligent inquiry and to effect proper service. Of course, since we have already held the trial court awarding the foreclosure decree had proper service and jurisdiction of the appellants and other necessary parties, we necessarily find no merit in this argument involving Lowrance.

For the reasons discussed above, we affirm.