SLIP OPINION

Cite as 2013 Ark. App. 471

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–13–24

| | |
|---|---|
| DELANE WRIGHT and LINDA WRIGHT<br><br>APPELLANTS<br><br>V.<br><br><br>NANCY E. VIELE et al.<br><br>APPELLEES | **Opinion Delivered** September 4, 2013<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. CV2008-212]<br><br>HONORABLE RHONDA K. WOOD, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

This appeal concerns the validity of a 1991 decree that quieted title to certain mineral interests in appellants Delane and Linda Wright.[1] The Van Buren County Circuit Court concluded that the 1991 decree was void because not all of the parties claiming an interest were made parties or properly served by publication in the 1991 case. Based on that conclusion, the circuit court denied the Wrights' motion for summary judgment and granted summary judgment quieting title to the mineral interests in appellees.[2] The Wrights appeal, contending that the prior decree was valid. We affirm.

---

[1]We dismissed an earlier appeal for lack of a final order. *Wright v. Viele*, 2012 Ark. App. 459.

[2]The appellees are Nancy Viele; PEC Minerals, LP; Stephanie Darnell; Timothy Hewett; Colonial Royalties Limited Partnership; Pentagon Oil Co.; and Chaparral Royalty Co.

*Background*

The parties trace their titles back to O.D. Gunn. On April 18, 1929, Gunn and his wife, Beatrice, conveyed a one-half interest in the minerals to Robert E. Garrett. The conveyance to Garrett also included a reference to an "E. Graves" as a grantee. There is a separate conveyance of a one-half interest in the minerals to E. Graves under the same date. At the time of these conveyances, Gunn was not the record owner of the property. By quitclaim deed dated May 14, 1929, W.W. Phillips and M.M. Phillips conveyed the property to Gunn. The deed from the Phillipses to Gunn was recorded on May 29, 1929.

In 1943, O.D. Gunn's heirs conveyed the property to the Wrights' predecessors in title by warranty deed. The Wrights obtained the property in 1975.[3]

On August 6, 1990, the Wrights filed a quiet-title action in the Van Buren County Chancery Court. The case was assigned docket number E-90-198. The caption of the complaint listed the property as a defendant. Other defendants named in the caption were Robert E. Garrett; E. Crows; Jo P. Cappeau, Jr.; John E. Emerson; John W. Cappeau; Colonial Royalties Co.; Investors Royalty Co., Inc.; L.O. McMillan; O.W. Killam; W.O. Dunaway; Verelle Dipert; Dan Dipert; Billie Jean Brown; Charles Hewitt; Griffin Moore; E.F. Evers; General Crude Oil Co.; W.A. Brown; Brown Foundation, Inc.; Stephanie H. Darnell; Timothy Hewett; G.C.O. Minerals Co.; and Mobil Oil Exploration & Producing Southeast, Inc.

---

[3]The property was conveyed to J.D. Wright and Delane Wright as tenants in common in 1972. J.D. Wright and Delane Wright conveyed the property to Delane and Linda Wright as tenants by the entirety in 1975.

SLIP OPINION

The quiet-title complaint asserted that the Wrights and their predecessors in title had "adversely possessed" the property and paid the property taxes on the property for more than thirty years. The Wrights alleged that the purported conveyance of one-half of the mineral interest by O.D. and Beatrice Gunn in 1929 was invalid because the Gunns were not the record owners of the property at the time of that conveyance; that the grant was invalid on its face in that there were inconsistent grantees listed; and that the legal description was invalid on its face. The allegation concerning the inconsistent grantees was due to the fact that Robert E. Garrett is listed as a grantee in two places and E. Graves was listed as grantee in a third place. The complaint further alleged that the Van Buren County Assessor improperly assessed the mineral interest separately from the surface interest because there had been no prior severance of the two interests. According to the complaint, this resulted in the mineral interest being certified to the state for nonpayment of taxes.

Some of the defendants were served with the summons and complaint by certified mail, and they filed answers. On August 6, 1990, the Wrights' attorney filed an affidavit for a warning order stating that a diligent search had been made and that the whereabouts of the remaining defendants were unknown.[4] The affidavit did not detail the efforts made as part of the search. A warning order was issued the same date. Both the affidavit and the warning order listed "E. Crows" as one of the defendants.

---

[4]The remaining defendants for whom service was attempted by warning order were Robert E. Garrett; E. Crows; Jo P. Cappeau, Jr.; John E. Emerson; John W. Cappeau; Colonial Royalties Co.; Investors Royalty Co., Inc.; L.O. McMillan; O.W. Killam; W.O. Dunaway; Charles Hewitt; Griffin Moore; E.F. Evers; General Crude Oil Co.; W.A. Brown; Brown Foundation, Inc.; Stephanie H. Darnell; and Timothy Hewett.

SLIP OPINION

A settlement was announced between the defendants who answered and the Wrights. A decree quieting title to both the surface interest and the mineral interest in the Wrights was entered on December 4, 1991. The decree recited that the remaining defendants were properly served with process as required by law and were wholly in default.

The present case began when Chase Properties, Inc., Holt Oil and Gas, LLC, and the heirs of Robert Garrett filed suit against the Wrights for declaratory judgment seeking to set aside the 1991 quiet-title decree. These plaintiffs later voluntarily dismissed their case.

Appellees, who trace their interest back to E. Graves, were allowed to intervene and filed a third-party complaint against the Wrights and Chesapeake Energy Corporation. Appellees alleged that in December 1991, the court erroneously quieted title to the oil, gas, and mineral ownership interests in the Wrights. According to appellees, the error occurred because the clerk made a mistake in recording a mineral grant (listing Robert Garrett twice as grantee of the mineral interest) and, therefore, appellees were not given notice of the filing of the complaint that resulted in the December 1991 quiet-title decree. Appellees alleged that the service by warning order in the 1990 case was defective. They also asserted that the Wrights failed to make a diligent inquiry as to the whereabouts of appellees or their predecessors in title. In their prayer for relief, appellees asked that the 1991 decree be declared null and void and that they be awarded damages for slander of title to include costs and attorney's fees. The Wrights and Chesapeake answered the complaint.

On March 2, 2011, appellees filed an amended third-party complaint naming XTO, SEECO, and a number of others as additional defendants, asserting they may claim a mineral

4

SLIP OPINION

interest in the subject property. XTO answered the complaint and pled the affirmative defenses of laches, waiver, estoppel, and limitations, and further pled that it was a bona fide purchaser for value without notice or knowledge of appellees' claims. The Wrights, SEECO, Chesapeake, and some of the other third-party defendants also answered asserting affirmative defenses.

A May 5, 2011 order realigned six of the third-party plaintiffs as third-party defendants. A second amended third-party complaint added these defendants. All of the third-party defendants filed answers except for Marty Griffith, Howland Gilley, William Beaumier, and Sharon Cotton.

On July 15, 2011, appellees filed a motion for summary judgment. The motion asserted that the Wrights' 1990 petition failed to state a cause of action and that there was no proper service on appellees or their predecessors in title in the 1990 case. The motion and brief also contended that the Wrights' claim to having adversely possessed the mineral interest failed because they admitted in the 1990 case that they did not actually drill or mine for minerals. Appellees amended their summary judgment motion to more explicitly assert that the 1991 decree was void. The amended motion also attached a certified copy of the 1990–91 case file as an exhibit.

The Wrights responded and filed a cross-motion for summary judgment. They asserted that the 1991 decree was valid because they had complied with the Rules of Civil Procedure in obtaining constructive service by warning order. The Wrights also argued that the affidavit stating that more than thirty days had elapsed since the first publication of the warning order



was not required because the lower court held a hearing prior to granting summary judgment. The Wrights prayed that summary judgment be denied to appellees and that their cross–motion be granted.

The circuit court entered its written order on September 16, 2011, granting the appellees' motion for summary judgment and declaring the 1991 quiet-title decree void as to all parties. The court found that the warning orders in the 1990 case were invalid because they failed to include a legal description of the property and because the Wrights had failed to file an affidavit stating that thirty days had elapsed since the warning order was first published. The court also denied the Wrights' motion for summary judgment, noting that the mineral rights should have never been quieted in the Wrights because "[o]ne can only adversely possess mineral rights by operating a mine." An amended order was entered September 29, 2011.

The Wrights attempted to appeal. However, we dismissed the appeal for lack of a final order. *Wright, supra.* Following the dismissal of the appeal, the circuit court entered an order on October 15, 2012, granting summary judgment to the appellees, while denying summary judgment to the Wrights. The order contains a Rule 54(b) certificate. On October 30, 2012, the court also granted appellees' motion and dismissed their slander of title claim without prejudice. The Wrights filed their notice of appeal on November 9, 2012.

*Arguments on Appeal*

The Wrights argue that the circuit court erred in granting appellees' motion for summary judgment because (1) there was valid service of process in the 1990 case, (2) the original petition contained sufficient facts to support the original decree, and (3) the appellees

6



never asserted a meritorious defense of ownership.

*Discussion*

Our standard of review depends on the grounds argued by the party that moved to set the decree aside. If the party claims that the judgment is void, then the matter is a question of law, which we review de novo. *Nucor Corp. v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004). Otherwise, we review under an abuse-of-discretion standard. *Id.* In the motion, appellees argued that the Wrights failed to obtain proper service in the 1990–91 case. Lack of service makes a default judgment void. *Cole v. First Nat'l Bank*, 304 Ark. 26, 800 S.W.2d 412 (1990). Therefore, our review of the circuit court's order is de novo.

The dispositive issue is the validity of the service in the 1990–91 case. Arkansas Rule of Civil Procedure 4 requires service resulting in actual notice in all cases where the identity or whereabouts of the defendant is known; however, in instances where the defendant's identity or whereabouts is demonstrated to be unknown, this rule provides a method of constructive notice that is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard. *See Horne v. Savers Fed. Sav. & Loan Ass'n*, 295 Ark. 182, 747 S.W.2d 580 (1988). The 1990 version of Arkansas Rule of Civil Procedure 4(f), which was in force at the time of the earlier proceeding, provided as follows:

> (f) Service Upon Defendant Whose Identity or Whereabouts Is Unknown: (1) Where it appears by the affidavit of a party or his attorney that, after diligent inquiry, the identity or whereabouts of a defendant remains unknown, service shall be by warning order issued by the clerk and published weekly for two consecutive weeks in a newspaper having general circulation in a county wherein the action is filed and by mailing a copy of the complaint and warning order to such defendant at his last known address, if any, by any form of mail with delivery restricted to the addressee or the agent of the addressee. This subsection shall not apply to actions against unknown



tort-feasors. (2) In all actions in which the plaintiff has been granted leave to proceed as an indigent without prepayment of costs, where it appears by the affidavit of a party or his attorney that, after diligent inquiry, the whereabouts of a defendant remains unknown, service shall be by warning order issued by the clerk and conspicuously posted for a continuous period of 30 days at the courthouse or courthouses of the county wherein the action is filed and by mailing by the plaintiff or his attorney of a copy of the complaint and warning order to the defendant at his last known address, if any, by any form of mail with delivery restricted to the addressee or the agent of the addressee.

At the time of the earlier proceeding, warning orders were governed by the provision of Rule 4(j), which stated:

> In any case in which a party seeks a judgment which affects or may affect the rights of persons who are not and who need not be subject personally to the jurisdiction of the court, the clerk shall issue a warning order. The warning order shall state the caption of the pleadings, a description of the property or other res to be affected by the judgment of the court, and it shall warn any interested person to appear within 30 days from the first date of publication of the warning order or be barred from answering or asserting his interest. The warning order shall be published weekly for at least two weeks in a newspaper of general circulation in the county in which the court is held. No default judgment shall be taken pursuant to this procedure unless the party seeking the judgment or his attorney has filed with the court an affidavit stating that thirty days have elapsed since the first publication of the warning order. In any case in which an interested person is known to the party seeking judgment or his attorney, the affidavit shall also state that 30 days have elapsed since a letter enclosing a copy of the warning order and the pleadings was sent to the known interested person at his last known address by a form of mail restricting delivery to the addressee or the agent of the addressee.

It is settled law that, being in derogation of the common law, statutory service requirements are strictly construed and compliance must be exact. *Rettig v. Ballard*, 2009 Ark. 629, 362 S.W.3d 260. This rule applies equally to the service requirements imposed by rules of the court. Proceedings conducted where the attempted service was invalid render judgments arising under them void. *Wilburn v. Keenan Cos., Inc.*, 298 Ark. 461, 768 S.W.2d 531 (1989); *Edmonson v. Farris*, 263 Ark. 505, 565 S.W.2d 617 (1978); *Davis v. Schimmel*, 252

Ark. 1201, 482 S.W.2d 785 (1972). Where the judgment is void for lack of jurisdiction, no proof of a meritorious defense is required. *Black v. Merritt*, 37 Ark. App. 5, 822 S.W.2d 853 (1992).

The Wrights argue that this is an improper collateral attack on the 1991 decree and that appellees' action to set aside the 1991 decree is barred by the three-year statute of limitations found in Ark. Code Ann. Section 18-60-510(a) (Repl. 2003). We disagree. Any proceeding to have a judgment declared void on the ground that it was entered without service or notice is a direct, rather than a collateral, attack on the judgment. *Davis*, 252 Ark. at 1209, 482 S.W.2d at 790. Moreover, the limitation found in section 18-60-510 does not apply where notice was not given to persons claiming an interest in the property or minerals. *Welch v. Burton*, 221 Ark. 173, 252 S.W.2d 411 (1952); *accord Gilbreath v. Union Bank*, 309 Ark. 360, 830 S.W.2d 854 (1992) (affirming trial court's setting aside an earlier quiet-title decree where the petition to set aside was filed more than four years after entry of the earlier decree; statute of limitations not discussed).

Citing *St. Louis Refrigerator & Wooden Gutter Co. v. Thornton*, 74 Ark. 383, 86 S.W. 852 (1905), the Wrights also argue that appellees cannot prevail because they failed to prove their own title and must rely "upon the strength of his own title and cannot rely upon the weakness of his adversary's." However, where the parties trace their title to a common source, the rule does not apply. *Brooks v. Johnson*, 250 Ark. 309, 465 S.W.2d 103 (1971). Here, the parties trace their respective titles to O.D. Gunn.

Under the 1990 version of Rule 4(j), a default judgment could not be taken unless the

9

plaintiff had filed with the court an affidavit stating that thirty days had passed since the warning order was first published or posted and that a copy of the order and complaint was mailed to the defendant's last known address.[5] There was no such affidavit filed in the 1990–91 case. The Wrights argue that the filing of two affidavits of publication complied with the requirement stating that more than thirty days had passed before the 1991 order was entered. The argument is contrary to the express language of 1990 Rule 4(j) and this court's recent decision in *Pulaski Choice, L.L.C. v. 2735 Villa Creek, L.P.*, 2010 Ark. App. 451, 376 S.W.3d 500. In their reply brief, the Wrights argue that *Pulaski Choice* involved a requirement that did not exist in the 1990 version of Rule 4. This is incorrect because the requirement existed in 1990 in a different section of Rule 4.

Although proof of publication may be by affidavit of the editor, proprietor, manager, or principal accountant of the newspaper in which the publication occurred, *see* Ark. Code Ann. § 16-3-104(a) (Repl. 2010), such an affidavit does not address the requirement that a copy of the complaint be mailed to the defendant or state that more than thirty days has elapsed since the first publication of the warning order. *Pulaski Choice*, 2010 Ark. App. 451, at 6, 376 S.W.3d at 504. Moreover, the rule requires that either the plaintiff or his attorney make such an affidavit, not the official of the newspaper in which the warning order appeared.

There is another reason that neither the parties nor the circuit court discussed that supports the circuit court's decision: a misnomer in the warning order and caption of the case that purports to warn E. Crows to appear and defend. The proper defendant should have been

---

[5]These same requirements are now found in Ark. R. Civ. P. 4(f).

E. Graves, the party to whom appellees trace their title after the conveyance from O.D. Gunn in 1929.

A misnomer is a mistake in naming a party. *Nucor Corp. v. Kilman*, 358 Ark. 107, 132, 186 S.W.3d 720, 736 (2004) (quoting *Black's Law Dictionary* 1015 (7th ed. 1999)). Where the mistake in naming the party is so substantial or material as to indicate a different entity, it is fatal. *See Crenshaw v. Special Adm'r of Estate of Ayers*, 2011 Ark. 222, at 4; *Shotzman v. Berumen*, 363 Ark. 215, 225, 213 S.W.3d 13, 17–18 (2005). Here, O.D. Gunn conveyed a one-half mineral interest to E. Graves, who was not listed as a defendant in the caption of the Wrights' 1990 quiet-title complaint. An "E. Crows" was listed as a defendant. The body of the complaint mentions "E. Grows" and E. Graves as persons who may claim an interest in the minerals. The prayer for relief again mentions "E. Crows," but not "E. Grows" or E. Graves. Both the affidavit for warning order and the warning order itself listed "E. Crows" as one of the defendants. The decree quieting title in the Wrights recited that "E. Crows" was one of the defendants constructively served and in default. Based on *Crenshaw* and *Shotzman*, this was a fatal misnomer resulting in the decree quieting title being void.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Law Office of Kent Tester, P.A.*, by: *Kent Tester*, for appellants.

*Graddy & Adkisson, LLP*, by: *Larry E. Graddy*; and *Halstead Law Firm*, by: *Kelly Halstead*, for appellees.