SLIP OPINION

Cite as 2015 Ark. App. 203

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-645

| | |
|---|---|
| XTO ENERGY, INC., AND GILBERT W. TARVER and BARBARA COOK<br>APPELLANTS<br><br>V.<br><br>MARSHALL RAY THACKER and ELENA MARIE THACKER, AS TRUSTEES OF THE THACKER FAMILY REVOCABLE LIVING TRUST, DATED APRIL 25, 1992, ET AL.<br>APPELLEES | **Opinion Delivered** April 1, 2015<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br>[NO. CV-2010-068]<br><br>HONORABLE MICHAEL A. MAGGIO, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**RAYMOND R. ABRAMSON, Judge**

This appeal concerns the validity of a 1984 decree that quieted title to certain mineral interests in appellees Marshall Ray Thacker and Elena Marie Thacker.[1] Appellants Gilbert Tarver[2] and Barbara Cook (collectively, "Tarver") filed suit challenging the 1984 decree. On cross-motions for summary judgment, the Van Buren County Circuit Court concluded that

---

[1]There are several other appellees in this case. They have various interests in the mineral estate by virtue of leases with the Thackers. These other appellees include Chesapeake Exploration, LLC; Chesapeake Investments; BP America Production Co.; Weiser-Brown Operating Co.; Charles N. Wohlford; Wolf Exploration, Inc.; Glen D. Fritsche; Kenneth L. Fritsche; Ursula Royalty, LLC; TMR Exploration, Inc. (collectively, Chesapeake); Riverbend Exploration and Production, LLC; and 4JW, Ltd. Chesapeake and 4JW have filed separate briefs, in addition to that filed by the Thackers. Riverbend has stated that it is not filing a separate brief but is adopting all of the arguments made by the other appellees.

[2]Gilbert Tarver died during the pendency of this action in the circuit court. His heirs were substituted as parties.

SLIP OPINION

the earlier decree was valid based on its finding that there had been proper service by publication in the 1984 case. The circuit court further concluded that a handwritten notation in the legal description of the deed conveying part of the mineral interest was surplusage and should not be given effect. Based on those conclusions, the court granted the motions for summary judgment filed by the Thackers and those claiming through them and denied the motions for summary judgment filed by Tarver and his oil and gas lessee, appellant XTO Energy Inc. XTO and Tarver appeal, contending that the prior decree quieting title was invalid but that the handwritten notation should be given effect. We reverse on the first point, but affirm on the second point.

*Background*

The parties trace their titles back to J.T. Riffey and his wife, Mary Riffey. On November 16, 1929, the Riffeys executed a mineral deed conveying an undivided one-half interest in oil, gas, and other minerals to N.H. Tarver and I.R. Timmons. The deed also includes a handwritten notation as part of the legal description, stating "also the South quarter of the Northeast quarter, 40 acres." The Timmons interest is not an issue in this appeal.

By three deeds, dated August 29, October 6, and November 1, 1930, the Riffeys conveyed the surface and remaining one-half interest in minerals to V.P. Bumpers. Gilbert Tarver and Cook are the heirs of N.H. Tarver, who died intestate in 1978. The Thackers are the successors in title to V.P. Bumpers, having acquired their interest in 1961.

On April 6, 1984, the Thackers filed a petition to quiet title in the chancery court of

Van Buren County. N.H. Tarver was named as one of several defendants.[3] In their petition, the Thackers asserted that they had been in "open[,] notorious and adverse possession of the subject property for a period in excess of Seven years and have paid taxes on all surface interests in such property." They further alleged that they owned all of the mineral interests previously conveyed, including the one-half interest in minerals conveyed to Tarver and Timmons. They asserted that the grantor of the various mineral interests listed in the complaint was not the record owner of the property and had no right to convey such property.

On the same day, the Thackers' attorney executed and filed an affidavit in which he stated that "after diligent inquiry the identity or whereabouts of the following named defendants is unknown: . . . N. H. Tarver." The affidavit listed all of the named defendants, but was otherwise silent with respect to detailing the efforts to locate the named defendants. The warning order was issued the same day. According to the affidavit of publication, the warning order was published for four weeks, between April 11, 1984, and May 2, 1984.

On June 22, 1984, the chancery court entered a decree quieting title in the Thackers. The decree recites that "Defendants appearing not although having been properly served as required by law."

---

[3]In addition, the 1984 action also named as defendants three different legal descriptions; and "Paul Whitten; Pisttsburgh [sic] Royalty Syndicate; J.M. Tate, Trustee; R.C. Martin; Bruce Whitcomb; I.R. Timmons; L.O. McMillian; O.W. Killian; Frank P. Redfern; John J. Redfern; Margaret A. Redfern; Frank J. Redfern; Margaret M. Redfern; L. Heston Witwer, Jr.; John J. Redfern, Jr.; William S. Little, Trustee; W.O. Dunaway; Griffith Moore; Lee Smith; Bradley Prod. Co.; the unknown heirs and successors of the aforementioned persons, corporations or partnerships."

SLIP OPINION

On March 30, 2010, Tarver filed this action. The complaint sought to set aside the 1984 quiet-title decree as void for lack of proper service and the failure to join all titleholders of record. Tarver also sought reformation of the legal description in the 1929 mineral deed to N.H. Tarver and Timmons and to give effect to the handwritten notation.

The Thackers and the other appellees answered, denying the complaint's material allegations and asserting that the complaint was barred by the earlier quiet-title decree and the statute of limitations found in Arkansas Code Annotated section 18-60-510(a) (Repl. 2003). Cross-claims were filed by several of the other appellees against the Thackers based on their warranting title to their lessees.

All parties moved for summary judgment. Tarver filed a motion for partial summary judgment contesting the validity of the quiet-title decree. In a supporting brief, Tarver argued that the affidavit for warning order was deficient because it contained no information as to the efforts to discover the identity or the whereabouts of N.H. Tarver or his heirs. Tarver did not address the issue of the handwritten notation in the legal description of the deed creating the mineral interest.

In its motion for summary judgment, XTO asserted that the 1984 quiet-title decree was void. XTO also sought a declaration that Tarver was entitled to a one-quarter interest in the minerals in the property. It also argued that the description should be changed from the "South quarter of the Northeast quarter" to "Southwest quarter of the Northeast quarter." XTO also submitted the court's file from the 1984 quiet-title action as an exhibit in support of its motion for summary judgment.

Following a hearing, the circuit court entered an order denying XTO's motion for summary judgment. After setting out the undisputed facts concerning the chain of title leading to the 1984 quiet-title action and the parties' arguments, the court found that XTO had failed to set forth legal argument or facts to support summary judgment voiding the 1984 decree. The court also found that the handwritten interlineation in the 1929 deed should be given no effect.

The court later entered a final order, granting summary judgment to the Thackers and denying Tarver's cross-motion for summary judgment. The court found that the 1984 quiet-title decree complied with the Rules of Civil Procedure as they existed in 1984. The court also found that Gilbert Tarver and Barbara Cook were provided valid constructive service by publication. Noting that the parties to the 1929 deed and the clerk who recorded the deed were deceased, the court further found that the handwritten notation in that deed was mere surplusage and should not be given effect. The court dismissed Tarver's complaint with prejudice and quieted title in the mineral interests in the Thackers. The order also included a Rule 54(b) certificate in order to preserve the various cross-claims filed against the Thackers. This appeal followed.

*Arguments on Appeal*

On appeal, Tarver and XTO contend that the circuit court erred in not finding the 1984 quiet-title decree was void for lack of proper service and that it erred in not giving effect to the handwritten interlineation on the 1929 mineral deed.

5

*Standard of Review*

Our standard of review depends on the grounds argued by the party who moved to set the decree aside. If the party claims that the judgment is void, then the matter is a question of law, which we review de novo. *Wright v. Viele*, 2013 Ark. App. 471, 429 S.W.3d 314. Otherwise, we review under an abuse-of-discretion standard. *Id.* In the petition for declaratory judgment, Tarver argued that the Thackers failed to obtain proper service in the 1984 case. Lack of service makes a default judgment void. *Id.* Therefore, our review of the circuit court's order is de novo. *Id.*

The standard of review on appeal in reformation of written instrument cases is de novo, but we do not reverse unless the circuit court's findings were clearly erroneous. *Longing Family Rev. Trust v. Snowden*, 2013 Ark. App. 81, 426 S.W.3d 488.

*Discussion*

We start with the basic arguments of the Thackers and those claiming through them. They argue that this is an improper collateral attack on the 1984 decree and that Tarver's action to set aside the 1984 decree is barred by the three-year statute of limitations found in section 18-60-510(a). We disagree. Our supreme court instructs us that

> [a] direct attack on a judgment is an attempt to amend it, correct [it], reform it, vacate it, or enjoin its execution in a proceeding instituted for that purpose. An attack is direct where the proceeding in which it is made is brought for the purpose of impeaching or overturning the judgment, and collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment.

*Nationwide Ins. Enter. v. Ibanez*, 368 Ark. 432, 436, 246 S.W.3d 883, 886 (2007) (citing

*Council of Co-Owners for Lakeshore Resort & Yacht Club Horizontal Prop. Regime v. Glyneu, LLC,*

6

367 Ark. 397, 405, 240 S.W.3d 600, 607 (2006)); *see also Davis v. Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972). Tarver brought this case for the very purpose of having the 1984 decree declared void ab initio, alleging that there was no service and no notice to N.H. Tarver or his heirs. Proceedings conducted where the attempted service was invalid render judgments arising under them void. *Wilburn v. Keenan Cos., Inc.*, 298 Ark. 461, 768 S.W.2d 531 (1989); *Edmonson v. Farris*, 263 Ark. 505, 565 S.W.2d 617 (1978); *Davis, supra; Wright, supra.* Therefore, we conclude that this is a direct, not collateral, attack on the 1984 quiet-title decree. *Davis, supra; Wright, supra.* Moreover, the three-year limitation period found in section 18-60-510 does not apply where notice was not given to persons claiming an interest in the property or minerals. *Welch v. Burton*, 221 Ark. 173, 252 S.W.2d 411 (1952); *accord Gilbreath v. Union Bank*, 309 Ark. 360, 830 S.W.2d 854 (1992) (affirming trial court's setting aside an earlier quiet-title decree where the petition to set aside was filed more than four years after entry of the earlier decree; statute of limitations not discussed).

The Thackers further rely on the 1984 decree's recitation that service was had in the manner required by law, and that this court, in reviewing the circuit court's decision upholding the earlier decree, must presume that the chancery court inquired into and found the existence of the facts authorizing it to render its decree. *See, e.g., Phillips v. Commonwealth Sav. & Loan Ass'n*, 308 Ark. 654, 826 S.W.2d 278 (1992). However, as explained below, the record in the 1984 case reflects areas of noncompliance with Rule 4(f) and the quiet-title statutes at the time the 1984 decree was entered, thereby rebutting the presumption. *See Adams v. Nationsbank*, 74 Ark. App. 384, 49 S.W.3d 164 (2001).

SLIP OPINION

The first issue is the validity of the service in the 1984 case. We conclude that service was not proper. N.H. Tarver was named as a defendant in the caption of the 1984 quiet-title action. As such, he was required to be subject personally to the jurisdiction of the court. However, N.H. Tarver was dead at the time of the 1984 quiet-title action. If he was dead, he could not be made a party, however perfect the constructive notice given as to him. *Gill v. More*, 76 So. 453, 456 (Ala. 1917); *see also Carr v. Kamins*, 60 Cal. Rptr. 3d 196 (Cal. Ct. App. 2007).

The fact that N.H. Tarver was deceased is not dispositive because in instances where, as here, the identity or whereabouts of his heirs is demonstrated to be unknown, Arkansas Rule of Civil Procedure 4 provides a method of constructive notice that is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard. *See Horne v. Savers Fed. Sav. and Loan Ass'n*, 295 Ark. 182, 747 S.W.2d 580 (1988). At the time of the 1984 quiet-title action, Rule 4(f), the rule governing constructive service, provided:

> Service Upon Defendant Whose Identity or Whereabouts Is Unknown: Where it appears by the affidavit of a party or his attorney that after diligent inquiry, the identity or whereabouts of a defendant remains unknown, service shall be by warning order issued by the clerk and published weekly for two (2) consecutive weeks in a newspaper having general circulation in a county wherein the action is filed and by mailing a copy of the complaint and warning order to such defendant at his last known address, if any, by any form of mail with delivery restricted to the addressee or the agent of the addressee.

Ark. R. Civ. P. 4(f) (1984).

As we have long held, statutory-service requirements, being in derogation of the common law, are strictly construed and compliance must be exact. *E.g.*, *Wright*, *supra*. This

rule applies equally to the service requirements imposed by rules of the court. *Id*. Proceedings conducted where the attempted service was invalid render judgments arising under them void. *Id*.

By the time of the 1984 quiet-title action, the supreme court had already held that Rule 4(f) required more than a conclusory affidavit stating that a diligent inquiry had been made in order to have valid service by publication. *Smith v. Edwards*, 279 Ark. 79, 648 S.W.2d 482 (1983); *see also Davis v. Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972); *Roswell v. Driver*, 268 Ark. 819, 596 S.W.2d 352 (Ark. App. 1980). Rule 4(f) permits constructive service by warning order only if the whereabouts of the defendant is unknown "after diligent inquiry." A mere recitation in an affidavit that a diligent inquiry was made is not sufficient. *Smith*, *supra*. The burden is on the moving party to demonstrate to the court that he actually attempted to locate the defendant. *Id*.

Simply stated, the affidavit for warning order in the 1984 case was insufficient because it was conclusory, containing no indication of what steps were taken as part of the required "diligent inquiry" as to the whereabouts of N.H. Tarver or his heirs. The Thackers attempted to cure this defect by submitting an affidavit from Dan Stripling, their attorney in the 1984 case, that, although stating that he had no independent recollection of the 1984 case, nevertheless listed the steps he believed that he would have taken in making a diligent inquiry as to the whereabouts of N.H. Tarver and the other named defendants. However, the facts showing the diligent inquiry were required to be set forth at the time the warning order was issued. *See Davis*, *supra*. Likewise, there is no indication in the case file from the 1984 case that

9

a copy of the petition and warning order were mailed to N.H. Tarver's last known address by restricted delivery mail. By its plain language, 1984 Rule 4(f) required both the publication of the warning order and the sending of the copy by mail to the defendant's last known address in order to perfect service by publication. Because constructive service is a departure from common law, compliance with Rule 4(f) must be exact. *Wright*, *supra*. However, there was not strict compliance with Rule 4(f) in this case.

Also, something more than the mere publication of a warning order is required to subject the interest of a defendant whose whereabouts or identity is unknown to the jurisdiction of the court in a proceeding to quiet and confirm title. *See Ingram v. Luther*, 244 Ark. 260, 424 S.W.2d 546 (1968). There must also be compliance with the requirements of the quiet-title statutes. *Id.*

Arkansas Code Annotated sections 18-60-501 to -505 (Repl. 2003) provide the statutory framework for actions to quiet title. Specifically, section 18-60-503(a) provides the procedure by which notification must be given to all persons who claim an interest in the disputed land. The statute reads in pertinent part:

> (a)(1) Upon the filing of the petition [to quiet title], the clerk of the court shall publish a notice of the filing of the petition on the same day of each week, for four (4) weeks in some newspaper published in the county. . . .

> (2) The petition shall describe the land and call upon all persons who claim any interest in the land or lien thereon to appear in the court and show cause why the title of the petitioner should not be confirmed.

Ark. Code Ann. § 18-60-503(a). This statutory notice serves a separate and distinct function from the warning order. *Frank v. Frank*, 175 Ark. 285, 298 S.W. 1026 (1927). It has long

been held that where there is no compliance with the statutory-notice requirements, as well as service on the named defendants, the circuit court lacks jurisdiction to adjudicate the rights to the land. *See Eason v. Flannigan*, 349 Ark. 1, 75 S.W.3d 702 (2002); *Ingram*, *supra*; *Frank*, *supra*; *Crain v. Burns*, 82 Ark. App. 88, 112 S.W.3d 371 (2003). The file from the 1984 quiet-title action indicates that a "Notice of Quiet Title Action" was issued by the court clerk on the same day that the action was filed. Section 18-60-503(a) requires publication for four weeks. However, the Thackers submitted a copy of an affidavit of publication showing that the statutory notice of quiet-title action was published for just two weeks. Because there was no proof of publication of this statutory notice for the required period, the Thackers could not establish a prima facie case to quiet title to the mineral interest in themselves, and the chancery court lacked subject-matter jurisdiction to enter the quiet-title decree. *See Eason*, *supra*; *Crain*, *supra*.

It is with some reluctance that we conclude that the chancery court lacked jurisdiction to enter the 1984 quiet-title decree and that the 1984 decree was void and should have been set aside. We realize that the decree has been relied upon for over thirty years and all of the ramifications that setting it aside entails. However, our duty to follow the law as set forth by our supreme court is clear and requires us to do so. Accordingly, we reverse the circuit court's order upholding the 1984 decree and remand for entry of an order setting aside the 1984 decree as void. The circuit court should then conduct whatever further proceedings are necessary to dispose of the remaining issues and claims.

The second issue concerns the handwritten interlineation to a portion of the legal

description in the 1929 mineral deed. The mineral deed's legal description states as follows:

> The Northeast Quarter of the Northwest Quarter of Section 21, Township 9 North, Range 12 West, 40 acres. Also the Southeast Quarter of the Northwest Quarter, 40 acres, and the Northwest Quarter of the Northeast Quarter, except 2 acres previously deeded away for Church and Graveyard Purposes All in Section 21, Township 9 North, Range 12 West.

There is a handwritten notation stating "also the South quarter of the Northeast quarter, 40 acres." XTO and Tarver sought to reform the mineral deed so that the handwritten interlineation was to be given effect. The circuit court found that the interlineation was not to be given any effect.

There are actually two issues under this argument: first, whether the legal description should be reformed to read as the *Southwest* quarter of the Northeast quarter and, second, whether the handwritten notation should be given effect.

The first part of this point is not preserved for our review. The circuit court, although reciting XTO's argument on this point, never ruled on this issue. It is well settled that issues not ruled on below will not be considered on appeal because there is no decision of the circuit court for this court to review. *See Morgan v. Chandler*, 367 Ark. 430, 241 S.W.3d 224 (2006); *Ark. Wildlife Fed'n v. Ark. Soil & Water Conservation Comm'n*, 366 Ark. 50, 233 S.W.3d 615 (2006).

Tarver and XTO next argue that the handwritten notation in the 1929 deed, while not a part of the original deed, should nevertheless be given effect because it is part of the land records entitled to be relied upon by title examiners. The Thackers, relying on *Bennett v. Henderson*, 281 Ark. 222, 663 S.W.2d 180 (1984), argue that no effect should be given to the

handwritten notation.

When interpreting a deed, the court gives primary consideration to the intent of the grantor. *Osborn v. Tennison*, 2014 Ark. App. 175, 434 S.W.3d 1. When the court is called on to construe a deed, we will examine a deed from its four corners for the purpose of ascertaining that intent from the language employed. *Id.* The intent of the grantor should be garnered solely from the language in the deed unless the language of the instrument is ambiguous, uncertain, or doubtful. *Id.*

With this in mind, we turn to the merits of the argument. We first note that the description in the notation—the South quarter of the Northeast quarter, 40 acres—is inaccurate and incomplete. Also, Tarver and XTO concede, as they must, that the parties to the deed, as well as the clerk who recorded the deed, are deceased, so there can be no parol testimony explaining who was responsible for the notation or its meaning. Circumstantial evidence, in the form of the Thackers' 1961 abstract, indicates that the notation was made sometime after that date. The fact that the person responsible for the notation, as well as its timing, is unknown distinguishes this case from *Rowland v. Griffin*, 179 Ark. 421, 16 S.W.2d 457 (1929), where the parties to that case stipulated that the clerk recording the deed made an error in the interest conveyed. In this situation, we are left with no choice but to follow the basic rule of construction of deeds that when subsequent words or markings are of doubtful import, they cannot be construed so as to contradict preceding words that are certain. *Bennett*, *supra*; *Buford v. Dearing*, 255 Ark. 538, 500 S.W.2d 931 (1973). We therefore hold that the handwritten notation is to be given no effect. Accordingly, the circuit court did

not err in granting summary judgment to the Thackers and those claiming under them on this point.

Affirmed in part; reversed and remanded in part.

VAUGHT and HIXSON, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Robert M. Honea*; and *Halstead Law Firm*, by: *Kelly Halstead*, for appellants.

*Morgan Law Firm, P.A.*, by: *M. Edward Morgan*, for appellees Marshall Ray Thacker and Elena Marie Thacker, as Trustees of the Thacker Family Revocable Living Trust Dated April 25, 1992.

*Danielson Law Firm, PLLC*, by: *Erik P. Danielson*, for appellee 4JW, LTD.

*Daily & Woods, PLLC*, by: *C. Michael Daily*, for appellees Chesapeake Exploration, LLC; Chesapeake Investments; BP American Production Company; Weiser–Brown Operating Company; Charles N. Wohlford; Wolf Exploration, Inc.; Glen D. Fritsche; Kenneth L. Fritsche; Ursula Royalty, LLC, and TMR Exploration.