Mabel KING, As the Administrator of Estate of Bobby King,
Deceased, and Individually *v.* J.W. CARNEY, M.D.;
J.W. Carney, M.D., P.A.; National Healthcare of Newport, Inc.,
Individually and d/b/a Harris Hospital; and John Does 1-25

99-1361                                         20 S.W.3d 341

Supreme Court of Arkansas
Opinion delivered July 7, 2000
[Petition for rehearing denied September 7, 2000.* ]

*Harold Erwin*, Judge;

*The Boyd Law Firm*, by: *Charles Phillip Boyd, Jr.* and *Timothy J. Cullen*, for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Lucinda McDaniel*, for appellees Virginia Carney, J.W. Carney, M.D., and J.W. Carney, M.D., P.A.

---

* GLAZE, J., would grant with respect to appellee National Healthcare of Newport, Inc.

*Friday, Eldredge & Clark,* by: *Jason B. Hendren,* for appellee National Healthcare of Newport, Inc., d/b/a Harris Hospital.

ROBERT L. BROWN, Justice. This appeal is brought by appellant Mabel King following dismissal with prejudice of her medical malpractice complaint against appellees J.W. Carney, M.D.; J.W. Carney, M.D., P.A.; National Healthcare of Newport, Inc., individually and d/b/a Harris Hospital (Harris Hospital); and John Does 1-25. She contends that her complaint was timely commenced under Rule 4(i) of our Arkansas Rules of Civil Procedure as good cause was shown for an extension of time in which to obtain service. She further contends that the dismissal by the circuit judge violated the one-year savings statute and that she reasonably relied on two valid court orders extending the time for her to obtain service, which she did before the circuit judge rescinded those orders. We agree that Mabel King complied with Rule 4(i) and obtained service within the extended time period before the circuit judge rescinded his orders. We reverse the order of dismissal of the circuit judge and remand for further proceedings.

According to the complaint of Mabel King, on or about October 23, 1995, her husband, Bobby King, fell from a combine and was taken to the emergency room of the Harris Hospital in Newport. He was treated for contusions, a hematoma, and chest pains, even though Mabel King contends her husband was not suffering from chest pains. Dr. J.W. Carney, as the treating physician gave him medication which caused a brain hemorrhage, and he subsequently died.

On October 17, 1997, Mabel King filed her complaint for medical malpractice against Dr. Carney and the other appellees and signed the complaint *pro se.*[1] On February 3, 1998, the Boyd Law Firm was retained as counsel for Mabel King, according to a motion filed by Charles Boyd. On February 5, 1998, Charles Boyd, as counsel, wrote Dr. Carney, the agent for service of Dr. Carney's Professional Association, and the administrator of Harris Hospital, and requested that they have the appropriate insurance carriers contact him immediately. Also on February 5, 1998, he moved for an extension of time under Ark. R. Civ. P. 4(i) to serve the various appellees. This motion is not in the record. However, an order of

---

[1] The complaint, however, states in its first paragraph that the plaintiffs are appearing by and through the Boyd Law Firm.

the circuit judge dated February 9, 1998, was entered on February 23, 1998, granting an extension of time so that Mabel King could identify and serve the John Doe defendants. On February 6, 1998, Charles Boyd mailed copies of an amended complaint to Dr. Carney, his P.A., and Harris Hospital. On February 10, 1998, Mabel King filed an amended complaint with Charles Boyd as named counsel.

On February 12, 1998, King filed an addendum to her motion for extension of time and asked for an extension of time until February 24, 1998, to serve the defendants. In the addendum, King asserted that Dr. Carney and the agent for service of process for Dr. Carney's professional association were both deceased which, she contended, presented a "further compelling reason" for an extension of time. It does not appear from the record that the circuit judge ruled on the addendum.

On February 17, 1998, which was the last day for serving process, Mabel King filed a second motion for extension of time.[2] In this motion, she referred to hospital reports just received and stated that time was needed to explore settlement options. She attached, as exhibits, letters that had been written to certain defendants attempting to enter into settlement negotiations. That same day, the circuit judge entered an order granting the second motion for extension of time, in which he set a deadline of June 14, 1998, for service of process.

On February 19, 1998, Virginia Carney as the widow of Dr. Carney moved to dismiss the King complaint as untimely. On April 1, 1998, Harris Hospital did likewise. On April 23, 1998, the circuit judge held a hearing on the motions to dismiss and orally ruled from the bench that he was dismissing the King complaint. On April 29, 1998, King moved for reconsideration of the oral ruling, and filed an addendum to that motion on May 6, 1998.

On May 4, 1998, proof of service of process was filed regarding Virginia Carney as administratrix of the estate of Dr. Carney and Harris Hospital. On June 4, 1998, proof of service on the Carney P.A. was filed. Virginia Carney and Harris Hospital filed second motions to dismiss on May 13, 1998, on grounds that no

---

[2] The one hundred and twentieth day actually fell on Saturday, February 14, 1998. Monday, February 16, 1998, was a holiday which made February 17, 1998, the last day for service of process.

g⟨ ⟩d cause had been shown for an extension of time for service of process. The Carney P.A. did likewise on June 5, 1998.

On August 27, 1998, a hearing on King's motion for reconsideration of the April 23, 1998 oral ruling and the second motions to dismiss filed by the Carney Estate, the Carney P.A., and Harris Hospital was held before the circuit judge. On September 15, 1998, an order dismissing the King complaint with prejudice was entered. In that order, the circuit judge found that there had been no attempt to serve the appellees within one hundred and twenty days and that no good cause existed to excuse this failure. The judge further said that his orders of extension entered February 17 and 23, 1998, were signed without knowledge that there had been no attempted service. The judge set aside his previous orders, citing Ark. R. Civ. P. 54(b) as authority, and dismissed the complaint as not being commenced within the statute of limitations. Reconsideration of the dismissal was requested by King and deemed denied without action by the circuit judge. An initial appeal was dismissed by the court of appeals under Rule 54(b), because the complaint against the John Doe defendants was still pending. The complaint against those defendants was nonsuited by King, and a second appeal ensued. Because our rules relating to service of process are at issue, we accepted jurisdiction of this appeal.

■■ King raises three points in her appeal, but we need only address her third point because we agree that it is dispositive of this case. King contends that all that is required under Rule 4(i) to extend time for service of process is the filing of a motion within one hundred and twenty days of the filing of the complaint. King is correct in this regard. See Edwards v. Szabo Food Serv., Inc., 317 Ark. 369, 877 S.W.2d 932 (1994). The time for service may then be extended by the trial judge upon a showing of good cause. In this case, King's attorney apparently made two motions for extension of time within one hundred and twenty days of filing the complaint. He contended in the motions in an effort to show good cause that (1) he had just received relevant hospital reports; (2) he had just been made aware that Dr. Carney and the agent for service of Carney P.A. were deceased; and (3) he was exploring settlement options. The circuit judge then entered two orders of extension dated February 17, 1998, and February 23, 1998. King obtained service on the Carney Estate, the Carney P.A., and Harris Hospital within the extended time frame set out in the order of February 17, 1998. It is true that the circuit judge orally ruled that the complaint

should be dismissed before service was had, but a motion for reconsideration challenged that oral ruling and no order of dismissal was entered until September 15, 1998. By that time, King had obtained service on the pertinent parties. Hence, the oral ruling had no effect. Ark. R. Civ. P. 58; Supreme Court Administrative Order No. 2.

■ The Carney Estate, the Carney P.A., and Harris Hospital vigorously contend that no good cause was shown for the extension orders and that the circuit judge was perfectly within the bounds of his authority in rescinding the two orders under Ark. R. Civ. P. 54(b), which provides that a trial court may revise its partial adjudications before entry of final judgment. We need not address the good-cause issue because King obtained service of process on the appellees *before* the extension orders were revoked. King had the right to rely on those extension orders, which, again, were in effect at the time service was obtained. *See Cole v. First Nat'l Bank of Ft. Smith,* 304 Ark. 26, 800 S.W.2d 412 (1990) (plaintiff had the right to rely on the judge's default judgment, though erroneously entered, and the savings statute applied).

The order of dismissal with prejudice is reversed, and this matter is remanded for further proceedings.

Reversed and remanded.

GLAZE, J., affirms in part; dissents in part.

IMBER, J., dissents.

SMITH, J., not participating.

TOM GLAZE, Justice, concurring in part; dissenting in part. I agree with Justice Imber's dissenting opinion wherein she criticizes the majority's holding which now permits any plaintiff who files a timely motion for extension and obtains an *ex parte* order to avoid proof of good cause until such time as the defendant demands a showing. This is bad precedent for the reasons discussed by Justice Imber. Nevertheless, I would still reverse the trial court's dismissal with prejudice against J.W. Carney, M.D., and J.W. Carney, M.D., P.A., because the record reflects the appellants complied with Rule 4(i) of the Arkansas Rules of Civil Procedure and showed good cause in obtaining an extension of time for service of process.

Appellants tried to contact all appellees by registered mail within the required 120-day period under Rule 4(i), and learned only about eight days before the period ended that both Dr. J.W. Carney's and his professional association's registered agent, attorney Fred Pickens, had died. In my view, appellants were confronted with a legitimate reason for seeking additional time to discover how (and upon whom) they must obtain service.

The same cannot be said of appellee-defendant Harris Hospital. In fact, appellants' registered letters reached Harris Hospital and its agent, and the appellants conceded they knew where Harris Hospital was and how to serve it. Nonetheless, they never attempted service on the hospital or its agent during the 120-day period. While appellants argue their delay in obtaining service was because they had made good-faith efforts at opening settlement dialogue, the appellants' broaching an interest in settlement, alone, cannot be good cause to extend the service of process time, or the Rule 4(i) extension period could well be manipulated or abused in seeking unnecessary delays.

Because I believe the trial court erroneously dismissed the appellants' complaint against Dr. Carney and his professional association, I would reverse the court. I would affirm its dismissal as to Harris Hospital.

ANNABELLE CLINTON IMBER, Justice, dissenting. I cannot agree with the majority's opinion because it effectively creates a safe harbor for plaintiffs who fail to perfect service within 120 days without good cause, as long as they file a motion to extend the time for service of process within that 120 days.

Mrs. King filed this action in the Circuit Court of Jackson County on October 17, 1997. Pursuant to Ark. R. Civ. P. 4(i), Mrs. King was required to perfect service upon the separate defendants on or before February 17, 1998. However, Rule 4(i) authorizes the trial court, in its discretion, to grant an extension of time to achieve service of process upon a showing of good cause, if the motion to extend is made within the 120 days. The record reflects that Mrs. King filed two motions for extension of time, one on February 12, 1998, and one on February 17, 1998. These extensions were granted by the trial court without a hearing and the time for service was extended until June 14, 1998.

Of course, the defendants, appellees here, objected to these extensions of time for service, and a hearing took place on April 23, 1998, wherein the defendants challenged the extensions of time for lack of good cause. Finding that Mrs. King failed to show good cause for extending the time for service because she had not even attempted service until her deadline had nearly passed, and agreeing that he had erred in granting the motions, the trial court ruled from the bench that he was setting aside his two orders granting the extensions of time and dismissing the case. Following this pronouncement from the bench, Mrs. King proceeded (1) to file a motion for reconsideration of the trial court's April 23, 1998 oral ruling, and (2) to perfect service of process on the separate defendants by the June 14, 1998 deadline set by the trial court in the February 17, 1998 extension order. The trial court eventually held a hearing on Mrs. King's motion for reconsideration, but, following the hearing, once again set aside the orders granting extension of time and dismissed the case with prejudice. The order of dismissal was ultimately filed on September 15, 1998.

The majority today holds that because Mrs. King relied upon the orders granting the extensions of time and obtained service before the trial court filed its order on September 15, 1998, the trial court's order of dismissal must be reversed. I cannot agree. It is not uncommon for trial courts to grant *ex parte* extensions of time for service. Following today's ruling, any plaintiff who files a timely motion for extension and obtains an *ex parte* order can avoid proof of good cause until such time as the defendant demands a showing. Even if an *ex parte* order granting an extension is subsequently set aside by the trial judge, as long as the plaintiff is able to serve the defendant before the set-aside order is filed with the clerk, the service is good. We are essentially creating a race between the trial court's filing of the order setting aside the extension and the plaintiff's perfection of service: whoever files first wins. This holding allows plaintiff's to avoid compliance with our rules of procedure, creating a safe harbor for parties who lack good cause for failure to serve within 120 days. I must respectfully dissent.

GLAZE, J., joins this dissent in part.