Cite as 2022 Ark. App. 332

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-19-996

| | |
|---|---|
| SHELBIE T. MCCUE, JEREMY MCCUE, AND ASHLE WARE<br><br>APPELLANTS<br><br>V.<br><br>MICHAEL H. DOMINGUEZ, EDUARDO CONTRERAS, AND STRATFORD INSURANCE COMPANY<br>APPELLEES | Opinion Delivered September 14, 2022<br><br>APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT<br>[NO. 62CV-17-44]<br><br>HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE<br><br>SUBSTITUTED OPINION ON GRANT OF REHEARING |

### STEPHANIE POTTER BARRETT, Judge

This appeal arises out of a motor-vehicle accident. The questions on appeal concern whether appellants Shelbie McCue, Jeremy McCue, and Ashle Ware properly obtained serial extensions of time to serve out-of-state defendants Michael Dominguez and Eduardo Contreras and, if so, whether they effectively served those defendants by warning order. Appellants later amended their complaint to add appellee Stratford Insurance Company as a defendant, alleging that Stratford had insurance coverage for Dominguez and Contreras and was obligated to pay any judgment rendered against them. When appellants sought a default judgment against Dominguez and Contreras, Stratford filed a response opposing it. Stratford also moved to dismiss the claims against it. After a hearing, the circuit court denied the motion for default judgment, finding that appellants had not complied with Arkansas

Rule of Civil Procedure 4(i) requiring good cause to be shown to extend the time for service. The court also found that the "green card" was defective and that service by publication of warning orders violated due process. The court dismissed the case with prejudice as to all three defendants. We affirm.

On November 13, 2014, Shelbie McCue was driving westbound on Interstate 40 in St. Francis County with Jeremy McCue and Ashle Ware as passengers in the vehicle. According to the complaint, an eastbound vehicle struck the vehicle being driven by Michael Dominguez, causing the Dominguez vehicle to cross the median and collide with appellants' vehicle, injuring appellants.

Appellants filed suit on March 3, 2017, alleging several acts of negligence on the part of Dominguez. Eduardo Contreras was alleged to be liable under a respondeat superior theory as Dominguez's employer. Appellants sought unspecified damages. Appellants were alleged to be residents of Texas; Dominguez, a resident of Florida; and Contreras, a resident of Tennessee. Summonses were issued for Contreras and Dominguez the same day. The summons addressed to Contreras was returned unserved on June 8, 2017. The summons addressed to Dominguez was returned unserved on June 13. Without an extension of time, the deadline for service of process would have run on July 15, 2017.

On June 27, 2017, appellants moved for an extension of time to serve the complaint, alleging that they had been unsuccessful in serving either Contreras or Dominguez at various out-of-state locations and detailing the efforts made to effect service. On July 10, the circuit

court entered an order finding good cause and extending the service deadline to October 19, 2017.

Appellants amended their complaint, adding Stratford as a defendant and seeking a declaratory judgment that Stratford was obligated to pay any judgment that may be rendered against Contreras and Dominguez. Stratford moved to dismiss appellants' claims against it. Among other things, Stratford contended that service of process on it was ineffective and that appellants failed to state facts on which relief could be granted as to Stratford.

Appellants would later file five additional motions for extensions of time to serve Contreras and Dominguez. Each motion incorporated appellants' prior pleadings. Some of the motions referenced appellants being in contact with Stratford, and others stated that the parties were negotiating a possible settlement. The circuit court granted each motion, finding good cause for the extensions without stating the good-cause basis. Cumulatively, these orders extended the time to serve Contreras and Dominguez until April 1, 2019.

On November 13, 2018, appellants' attorney filed an affidavit for warning order, stating that Dominguez and Contreras were out-of-state defendants whom appellants had been unable to serve.[1] The affidavit also asserted that appellants' attorney had made diligent

---

[1] The Nonresident Motorist Act, Ark. Code Ann. § 16-58-121 (Repl. 2005), provides that nonresident owners or operators who drive motor vehicles on highways of this state are deemed to have appointed the Arkansas Secretary of State as the nonresident's agent for service of process in any action or proceedings against him growing out of any action or collision in which the nonresident may be involved. Since the nonresident owner's "agent" can be personally served within the state under the Act, the circuit court is able to obtain in personam jurisdiction over nonresidents by service on the Secretary of State. *See Shaffer v.*

efforts to ensure that Dominguez and Contreras were served, including employing process servers and private investigators to locate and serve Dominguez and Contreras, but that they could not be located and that their whereabouts were unknown. The affidavit asserted that service was attempted on Dominguez at two different locations and on Contreras at three different locations. Also attached to the affidavit were emails and other correspondence from various process servers who attempted to serve the defendants. It should be noted that all efforts listed in the affidavit for warning order were taken prior to the first motion for extension filed June 29, 2017. The clerk issued warning orders the same day. On January 24, 2019, appellants filed proof that the warning orders had been published in the *Forrest City Times-Herald*, a local Arkansas newspaper.

On April 15, 2019, appellants moved for default judgment against Dominguez and Contreras. The motion stated that "service has been perfected and obtained on all of these two individuals [sic] including a Warning Order, and other methods of service of process on the Defendants and they have failed to file an Answer in the case and, therefore, Plaintiffs are entitled to a default judgment against these two Defendants."

Stratford filed a response opposing a default judgment against its putative insureds. Stratford argued that service through such a warning order was not proper for cases in which the defendant must be subject to the court's personal jurisdiction. Stratford also argued that a default judgment would be improper because service by publication in a local Arkansas

---

*Heitner*, 433 U.S. 186, 202 (1977) (citing *Hess v. Pawloski*, 274 U.S. 352 (1927)); *Renfro v. Adkins*, 323 Ark. 288, 294, 914 S.W.2d 306, 309 (1996).

newspaper had no legitimate probability of providing notice to the individual defendants residing in Florida or Tennessee. Stratford further argued that the warning order was untimely in that appellants did not show good cause for granting the subsequent motions for extensions.

In their reply to Stratford's response, appellants argued Stratford lacked standing to raise an argument on behalf of Dominguez and Contreras. Appellants also argued that the warning orders complied with Arkansas Rule of Civil Procedure 4.

The circuit court held a hearing on appellants' motion for default judgment on July 25, 2019. At the conclusion of the hearing, the court ruled from the bench and denied appellants' motion for default judgment against Dominguez and Contreras. The court found that appellants had not complied with Rule 4(i) because no good cause was shown for the motions for extension of time to obtain service. The court also found that service by publication in a local newspaper in Arkansas violated due process because Dominguez and Contreras resided in Florida and Tennessee, and such action was not reasonably calculated to apprise the defendants of the lawsuit. The court dismissed appellants' complaint as to all three defendants with prejudice. When appellants objected to the circuit court's consideration of Stratford's motion to dismiss because they were not given notice that the motion would be considered at the hearing, the court stated that it was doing so on its own motion.[2] Appellants made no other objections at this hearing.

---

[2]As part of its motion to dismiss appellants' claims against it, Stratford alleged that service of process on it was improper under Ark. R. Civ. P. 4(d)(8); that venue in St. Francis

5

On August 22, 2019, prior to the entry of an order, appellants filed a motion for reconsideration. Appellants argued that the warning orders constituted sufficient service upon Dominguez and Contreras and that they were entitled to a default judgment.

On September 3, 2019, the circuit court entered its order denying the motion for a default judgment against Dominguez and Contreras and dismissing the complaint against Dominguez, Contreras, and Stratford with prejudice.

At the conclusion of an October 3, 2019 hearing on appellants' motion for reconsideration, the circuit court ruled from the bench, denying the motion for reconsideration. On October 4, appellants filed a notice of appeal from the order denying the default judgment and dismissing their complaint. The court entered its order memorializing its bench ruling on the motion for reconsideration on October 9. Appellants timely filed a supplemental notice of appeal to include the deemed denial of their motion for reconsideration.

We must first address two procedural issues. Stratford suggests that appellants' notice of appeal is untimely and argues that appellants' posttrial motion could not extend the time for filing the notice of appeal and that appellants' notice of appeal was therefore untimely

---

County was improper as to Stratford; that the circuit court lacked personal jurisdiction over Stratford; that the claims against Stratford were not ripe until a judgment was rendered against Stratford's putative insureds; and that appellants failed to state sufficient facts for relief against Stratford under Ark. R. Civ. P. 12(b)(6). The circuit court did not state a reason for Stratford's dismissal.

6

because the order had been entered thirty-one days before their first notice of appeal. We disagree.

Arkansas Rule of Appellate Procedure–Civil 4(a) provides that a notice of appeal must be filed within thirty days from the entry of the judgment, decree, or order from which an appeal is taken. *Rye v. Rye*, 2021 Ark. App. 286, 625 S.W.3d 761. If, however, a party "timely" files a motion for judgment notwithstanding the verdict under Arkansas Rule of Civil Procedure 50(b), a motion to amend findings of fact or make additional findings under Rule 52(b), a motion for a new trial under Rule 59(a), "or any other motion to vacate, alter or amend the judgment made no later than 10 days after entry of judgment," the time for filing a notice of appeal may be extended. Ark. R. App. P.–Civ. 4(b)(1); *Rye, supra*. Stratford contends that appellants' motion for reconsideration did not extend the time for filing the notice of appeal because that motion was filed before, not after, entry of the order appealed from.

Arkansas Rule of Appellate Procedure–Civil 4(b)(1) provides that upon the timely filing of certain specified motions, "or any other motion to vacate, alter, or amend the judgment made no later than 10 days after entry of judgment," the time for filing a notice of appeal shall be extended. Here, in substance, appellants' motion for reconsideration was actually a motion for new trial under Ark. R. Civ. P. 59 in that they claimed that the circuit court's decision regarding the showing of good cause was contrary to Arkansas law, which is a specifically enumerated ground for a new trial under Rule 59(a)(6). *Slaton v. Slaton*, 330

7

Ark. 287, 956 S.W.2d 150 (1997). Thus, appellants' posttrial motion served to extend the time for filing the notice of appeal.

Furthermore, Stratford cites no authority for its interpretation of Rule 4. As this court has stated many times, arguments that are unsupported by convincing argument or authority will not be considered on appeal unless it is apparent without further research that the arguments are well-taken. *Boatright v. S-R Plaza, LLC*, 2021 Ark. App. 47, at 6, 617 S.W.3d 726, 730.

Next, appellants argue that Stratford does not have standing to raise arguments on behalf of Dominguez and Contreras because Stratford's attorney stated that he did not represent the two individual defendants. Although appellants raised some of these issues at the hearing on the motion for default judgment, they failed to obtain an express ruling from the circuit court. It is an appellant's responsibility to obtain a ruling to preserve an issue for appeal, and the failure to obtain a ruling precludes our review on appeal. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651.

We now turn to the merits of the appeal. In denying appellants' motion for default judgment, the circuit court found that appellants did not show good cause when they obtained the various extensions of time to serve the complaint on Dominguez and Contreras. Appellants contend that they showed good cause for the extensions they sought by detailing their efforts to serve Dominguez and Contreras in their first motion for extension of time and then incorporating those allegations in their subsequent motions.

8

The Arkansas Supreme Court addressed the issue of good cause and when it must be shown in obtaining an extension of the time for service of process under Arkansas Rule of Civil Procedure 4(i)(2) in *Henyan v. Peek*, 359 Ark. 486, 493, 199 S.W.3d 51, 54 (2004). The supreme court held that the plain language of Rule 4(i)(2) dictates that the showing of good cause to extend the period for service must be made *prior* to the granting of an extension, meaning that a plaintiff seeking to extend the time to obtain service must show good cause for why that particular extension is necessary. We hold that appellants failed to make such a showing.

Here, it is undisputed that appellants properly obtained their first extension within 120 days of filing suit against Dominguez and Contreras. Stratford conceded as much. Appellants' motion alleged that they had been unsuccessful in serving either Contreras or Dominguez at various specified out-of-state locations. The motion also detailed those efforts. On July 10, 2017, the circuit court entered an order finding good cause and extending the service deadline to October 19, 2017. However, appellants' second motion for extension of time, filed October 2, 2017, does not state any cause. It merely incorporated the allegations from the original motion and added that appellants' attorneys had been in contact with an unnamed potential insurance carrier—presumably, Stratford—for Dominguez and Contreras. The motion did not detail the efforts made since the previous extension.

Likewise, appellants' third motion also does not state good cause for an extension of time. It recounts the history of the earlier extensions, states that appellants "have continued to attempt to locate and serve the Defendants, without success, as of this time, but have

9

added [Stratford] to the litigation," and states that they "are in the process of serving [Stratford] with the original Complaint[.]" Appellants' fourth motion for extension of time, filed on May 30, 2018, again incorporated the prior filings by reference and noted Stratford's addition as a defendant. The motion also asserted that the "parties were attempting to negotiate a settlement." The *Henyan* court held that an allegation in an extension motion that the parties were attempting to negotiate a settlement was not a showing of cause, let alone good cause, to extend the time for service under Rule 4(i). 359 Ark. at 493–94, 199 S.W.3d at 55. Appellants' 2018 fifth and sixth motions for extensions of time also do not contain any cause for the extensions. Therefore, the circuit court did not err in finding that appellants failed to show good cause for the extensions, notwithstanding the previous findings of good cause in the orders granting those extensions.

The dissent takes the position that if good cause is shown once, the same good cause is valid for all future extensions regardless of the parties' failure to make any further effort at service. A party cannot rest on the initial reasons for subsequent serial extensions without detailing what actions have been taken since the last extension. Furthermore, *Henyan* held that attempts to negotiate a settlement—the reason given in the fourth motion for extension of time—is not a showing of cause, much less good cause.

Citing *King v. Carney*, 341 Ark. 955, 20 S.W.3d 341 (2000), appellants argue that once the orders of extension were entered, they had the right to rely on them. However, appellants have waived this issue because they never specifically argued to the circuit court

that they had the right to rely on the orders of extension. It is well settled that this court will not consider arguments raised for the first time on appeal. *Henyan*, 359 Ark. at 494, 199 S.W.3d at 55. Similarly, this court has repeatedly held that a party's failure to obtain a ruling is a procedural bar to our consideration of the issue on appeal. *Id.* The dissent complains that appellants have no opportunity to register an objection and argue below that they are entitled to rely on the circuit court's extension orders. Appellants could have objected and argued reliance at the hearing during which their lawsuit was dismissed or even in the motion for reconsideration, which was filed after trial. They did not and cannot now raise the issue for the first time on appeal.

This brings us to the validity of the warning orders. Stratford argues that the warning orders were invalid because they were not issued by the circuit court but, rather, by the circuit clerk. Appellants argue that the warning orders were valid and complied with Rule 4 when they were issued.

In a 2018 per curiam order, the Arkansas Supreme Court made substantial revisions to the content and organization of Arkansas Rule of Civil Procedure 4 by moving much of what had been former Rule 4(f) on warning orders to new Rule 4(g)(3). *In re Recommendations of the Comm. on Civ. Prac.*, 2018 Ark. 239 (per curiam). These changes were effective January 1, 2019. *Id.* at 1. The new, amended Rule 4(g) limited the use of warning orders issued by the clerk to situations in which a party seeks a judgment that may affect the rights of another person who does not have to be subject personally to the court's jurisdiction. Ark. R. Civ. P. 4(g)(3). If personal jurisdiction over the defendant is required, then the plaintiff cannot use

a warning order from the clerk but must instead seek a court order under Rule 4(g)(4). Under

the new Rule 4(g)(4), a court "may order service by any method or combination of methods

reasonably calculated to apprise the defendant of the action."

When the warning orders were issued and first published, they complied with the

rule then in effect. *See May v. Goodman*, 2013 Ark. 82 (explaining "straddle" cases concerning

amendment of procedural rules). However, the other steps required by amended Rule 4(g)

before service by warning order was effective occurred *after* the effective date of the

amendments, and appellants failed to comply with those steps. For example, Rule 4(g)(3)(D)

provides as follows:

> No judgment by default shall be taken pursuant to this subdivision unless the party seeking the judgment or his or her attorney has filed with the court an affidavit stating that 30 days have elapsed since the warning order was first published or posted. The affidavit shall be accompanied by the required proof of publication or posting of the warning order. If a defendant or other interested person is known to the party seeking judgment or to his or her attorney, the affidavit shall also state that 30 days have elapsed since a letter enclosing a copy of the warning order and the complaint was mailed to the defendant or other interested person.

The warning orders in the present case were issued on November 13, 2018. Proof of

publication was filed on January 24, 2019. Appellants filed their motion for default

judgment on April 15, 2019. Although an affidavit of service was filed for Contreras, no

affidavit was filed for Dominguez. However, appellants did not state in the affidavit filed

with their motion for default judgment that thirty days had elapsed since the warning order

was first published or that a copy of the warning order and the complaint were mailed to

Dominguez, Contreras, or Stratford. These were not new requirements added when Rule 4

was amended. Rather, these requirements were previously found in former Rule 4(f)(4). *See XTO Energy, Inc. v. Thacker*, 2015 Ark. App. 203, 467 S.W.3d 161. Thus, appellants did not comply with either the version of Rule 4 in effect when the warning orders were issued or the later version as amended.

Appellants also argue that the dismissal as to Dominguez and Contreras should have been without prejudice and cite Ark. R. Civ. P. 4(i).[3] However, Rule 4(i) must be read in light of other procedural rules, such as the statute of limitations. *Bodiford v. Bess*, 330 Ark. 713, 715, 956 S.W.2d 861, 863 (1997). The dismissal-without-prejudice language in Rule 4(i) does not apply if a plaintiff's action is otherwise barred by the running of a statute of limitations. *Id*. Here, appellants filed a complaint against Dominguez and Contreras on March 3, 2017, to recover damages for personal injuries arising from a November 13, 2014 automobile accident. Under Arkansas Code Annotated section 16-56-105 (Repl. 2005), the statute of limitations for negligence actions is three years. Appellants never obtained personal service on Dominguez and Contreras within the three years. As discussed above, service of the warning orders did not strictly comply with the requirements of Rule 4 and was completed outside the three years and well past the last valid extension of time for service. Rule 4(i) also provides that the circuit court may dismiss the action as to any defendant not properly served within 120 days on the court's own initiative. Therefore, the circuit court did not err in dismissing the complaint against Dominguez and Contreras with prejudice.

---

[3]Appellants did not argue that Stratford's dismissal with prejudice was in error.

Finally, appellants argue that the circuit court erred in failing to grant their motion for default judgment. They argue that the warning order was proper, that Dominguez and Contreras failed to plead or answer the complaint, and that they were entitled to a default judgment. We disagree.

Default judgments are not favorites of the law and should be avoided when possible. *B&F Eng'g, Inc. v. Cotroneo*, 309 Ark. 175, 830 S.W.2d 835 (1992). Appellants' argument ignores the discretion given to the circuit court in granting a default judgment and presupposes the validity of service of the warning orders. As discussed above, appellants never obtained valid service on Dominguez or Contreras. Arkansas courts have recognized that judgments by default rendered without valid service are judgments rendered without jurisdiction and are therefore void. *S. Transit Co. v. Collums*, 333 Ark. 170, 966 S.W.2d 906 (1998); *XTO Energy, supra*; *Wright v. Viele*, 2013 Ark. App. 471, 429 S.W.3d 314. This includes default judgments based on warning orders. *XTO Energy, supra*. Therefore, the circuit court did not abuse its discretion in denying appellants' motion for default judgment.

Affirmed.

WHITEAKER, VAUGHT, MURPHY, and BROWN, JJ., agree.

VIRDEN, J., concurs in part and dissents in part.

**BART F. VIRDEN, Judge, concurring in part and dissenting in part**. I respectfully concur in part and dissent in part. Our opinions are written for three audiences: the public, the bench, and the bar. While this decision would be of doubtful interest to the public, it should be of high interest to the bench and bar as a cautionary tale. I believe that we have

14

made new law, unsupported by either the plain language of Arkansas Rule of Civil Procedure 4 or our caselaw, by holding that appellants were unable to rely on the court's orders for extension of time to serve and dismissing with prejudice. To the practitioners trying to get a lawsuit underway, the majority opinion today holds that just because a trial court grants an extension for service pursuant to the rules and finds that good cause has been shown, you rely on those orders at your own peril.

The most salient fact in this case is that service was never completed. I agree the case should be dismissed, but it should be dismissed without prejudice and for lack of service. Arkansas Rule of Civil Procedure 4(i) sets forth the time limits for service of process as follows:

(i) *Time Limit for Service.*

(1) If service of process is not made on a defendant within 120 days after the filing of the complaint or *within the time period established by an extension granted* pursuant to paragraph (2), the action shall be dismissed as to that defendant without prejudice on motion or on the court's initiative.

Ark. R. Civ. P. 4(i)(1) (emphasis added).

This is where our analysis should end; however, paragraph 2 of the Rule invites discussion as it is the focus of the opinion.

Rule 4(i)(2) provides,

(2) *The court, on written motion and a showing of good cause, may extend the time for service if the motion is made within 120 days of the filing of the suit or within the time period established by a previous extension.* To be effective, an order granting an extension must be entered within 30 days after the motion to extend is filed, by the end of the 120-day period, or by the end of the period established by the previous extension, whichever date is later.

(Emphasis added.)

First, regarding the serial extensions to time allowed for service (which, as mentioned earlier, we need not discuss to decide this case), my opinion differs from the majority opinion, and I think the extensions were in compliance with the law and agree with the appellants' compelling argument that (1) they provided contemporaneous good cause for the extensions granted by the court, and (2) they should be able to rely on the court orders finding that there was good cause shown for the extensions. The majority opinion relies on *Henyan v. Peek*, 359 Ark. 486, 493, 199 S.W.3d 51, 54 (2004), in which our supreme court held that the party attempting service must strictly comply with the service requirements of Rule 4(i), which includes making a contemporaneous show of good cause to grant the extension. I fully agree with this holding; however, I disagree that *Henyan* applies here. *Henyan* is distinguishable from the instant case because in *Henyan*, the plaintiff *never* gave any reason for the extension requests. Our supreme court held that "the time for service may be extended on the condition of a showing of good cause to justify extending the initial 120-day period. As such, it will not suffice, as Appellants urge, for good cause to be offered *after the fact* to justify an extension that has already been granted." *Id.* By contrast, here, the initial request was fairly detailed, and even the appellees admit the first request supplied sufficient facts to support good cause for the extension. The following motions to extend time adopted the first and were deemed to state sufficient good cause (that the impediments to service at that time still existed) for the trial court's subsequent extensions. There was no

after-the-fact justification in the instant case. When construing the meaning of a court rule, we use the same means and canons of construction that we use to interpret statutes. *Tollett v. Wilson*, 2020 Ark. 326, 608 S.W.3d 602. The primary rule of statutory construction is to give effect to the intent of the drafting body. *3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of the Am. Legion, Dep't of Ark., Inc.*, 2018 Ark. 91, 548 S.W.3d 137. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous, we determine the drafter's intent from the ordinary meaning of the language used. *Id.*

I fear we are creating a requirement that is not stated in either Rule 4 or our caselaw. No doubt good cause must be shown, but this opinion would be the first to require that good cause must be stated anew or even that there must be new reasons for each extension. Specifically incorporating the previous detailed explanation of the conditions impeding service into the following motion constitutes a contemporaneous showing of good cause. Our holding puts form over function and diverges from the intent of the drafting body and the meaning of the plain language of Rule 4. But to circle back, there was never completed service in this case, and the validity of the motions, or "good cause" extension orders, need not be ruled on by us. No service equals dismissal.

Moreover, it is absurd to hold that the appellants could not rely on the trial court's extensions of time to serve. In *King v. Carney*, 341 Ark. 955, 959, 20 S.W.3d 341, 343 (Ark. 2000), our supreme court held that

17

[t]he Carney Estate, the Carney P.A., and Harris Hospital vigorously contend that no good cause was shown for the extension orders and that the circuit judge was perfectly within the bounds of his authority in rescinding the two orders under Ark. R. Civ. P. 54(b), which provides that a trial court may revise its partial adjudications before entry of final judgment. *We need not address the good-cause issue because King obtained service of process on the appellees before the extension orders were revoked. King had the right to rely on those extension orders, which, again, were in effect at the time service was obtained. See Cole v. First Nat'l Bank of Ft. Smith*, 304 Ark. 26, 800 S.W.2d 412 (1990) (plaintiff had the right to rely on the trial court's default judgment, though erroneously entered, and the savings statute applied).

The order of dismissal with prejudice is reversed, and this matter is remanded for further proceedings.

(Emphasis added.)

The majority distinguishes *King* from the instant case, explaining that here, the appellants never specifically argued to the circuit court that they had the right to rely on the orders of extension; thus, the issue was waived, and we do not consider arguments raised for the first time on appeal. A reading of the *King* case makes it clear that the reliance argument was made to the supreme court, not the trial court; thus, again, we are citing a case for a proposition that it does not hold to avoid addressing a sound argument.

I have a problem with this holding. As a practical matter, the appellants clearly relied on the court's extensions for time to serve, and they propounded this argument to the trial court. Remember, the appellants went to a hearing on their motion for a default judgment, and while there—over the objection to lack of notice—the trial court sua sponte ruled in favor of the insurance company, arguing for insureds that the insurance company didn't represent, and dismissed the entire case. When should the appellants have registered an objection to not being able to rely on the court's extension orders? Before they knew it was an issue? How?

Lastly, there is also an issue of whether the dismissal should be with or without prejudice. A very good argument can be made that the savings statute should save the case. Arkansas Code Annotated section 16-56-126 (Repl. 2005), provides in part:

> (a)(1) If any action is commenced within the time respectively prescribed in this act, in §§ 16-116-101—16-116-107, in §§ 16-114-201—16-114-209, or in any other act, and the plaintiff therein suffers a nonsuit, or after a verdict for him or her the judgment is arrested, or after judgment for him or her the judgment is reversed on appeal or writ of error, the plaintiff may commence a new action within one (1) year after the nonsuit suffered or judgment arrested or reversed.

In *Jones v. Douglas*, 2016 Ark. 166, at 8, 489 S.W.3d 648, 653, our supreme court held that "[t]he savings statute reflects the General Assembly's 'intent to protect those who, although having filed an action in good faith and in a timely manner, would suffer a complete loss of relief on the merits because of a procedural defect.' *Rettig v. Ballard*, 2009 Ark. 629, at 3–4, 362 S.W.3d 260, 262 (citing *Linder v. Howard*, 296 Ark. 414, 757 S.W.2d 549 (1988))." The court held that appellants made a "timely, completed *attempt* to serve appellees and should be afforded the benefit of the savings statute." *Id.* at 9, 489 S.W.3d at 654. There is no firm definition of what constitutes a "timely, completed attempt to serve," and whatever the case, the majority reaches the conclusion that is not what we have here, depriving the appellants of their day in court.

Concurring in part; dissenting in part.

*David A. Hodges*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Gregory T. Jones* and *Troy A. Price*, for separate appellee Stratford Insurance Company.